1 **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela Lancaster, et al., | No. CV-18-00128-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Your Story Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. 8.) The motion has been fully briefed. Having fully considered the matter, the Court will grant the motion as to Defendant Katherine Daniels. The Court will deny the motion as to Defendants Your Story, Inc., and Donna Zucker.

## BACKGROUND AND FACTUAL ALLEGATIONS

The factual allegations pertinent to personal jurisdiction are as follows. Plaintiffs Pamela Lancaster and Thomas Frank reside and conduct business in Pima County, Arizona. (Doc. 1, ¶ 1.) Lancaster is an internationally recognized sound healing specialist, life coach, and licensed body therapist. (*Id.* at ¶ 11.) Frank is a naturopathic physician and shaman who integrates master-level massage and acupuncture with ceremonial practices for restorative wellness. (*Id*.) Plaintiffs provide their services to guests at Miraval Arizona Resort and Spa, in Tucson, Arizona (the Resort) both by individual treatment and regularly-scheduled retreats. (*Id*.)

Plaintiffs' relationship with the Resort is that of independent contractor. (*Id.* at ¶ 12.) Plaintiffs' business success depends primarily on the marketing of their retreats and services through the Resort website, from their reputation as practitioners, and from client or patient referrals. (*Id.* at ¶ 13.)

In 2014, Plaintiffs decided that having a book would be an effective means of engaging with and educating existing and prospective clients or patients. (*Id.* at ¶ 14.) Having become aware sometime between February and June of 2014 that Donna Zucker was a writer, Plaintiffs contacted Zucker to write a book about their practice. (Doc 13-1, ¶¶ 5-8.) Zucker is a resident of New York and her business, Your Story Inc., is a corporation created under the laws of New York. (Doc. 1, ¶ 2; Doc. 8, p. 2.)

On August 28, 2014, Plaintiffs and Zucker entered into three agreements: a three page "Your Story, Inc. Contract," a two-page "Contract for Book Outline Scope of Services," and a two-page "Book Proposal." (Doc. 1, ¶ 15.) Under the terms of the Contract, Zucker would deliver a book outline and a manuscript to Plaintiffs by February 15, 2015. (*Id.* at ¶ 16; Doc. 1-2, Ex. A, p. 5.) The Contract specified: "all ideas, plans, improvements, or inventions (the 'Materials') developed by [Zucker] shall, subject to payment as provided herein, belong to [Plaintiffs]." (Doc. 1, ¶ 17; Doc. 1-2, Ex. A, p. 3.) For their part, Plaintiffs agreed to pay Zucker for reasonable expenses and specifically, Zucker's travel expenses "including flight and lodging from White Plains, NY to Tucson, AZ for the purpose of Conducting Interviews; Attending "Awakening the Divine Self" at Miraval Resort & Spa, January 2-6, 2015." (Doc. 1-2, Ex. A; p. 2.) The Contract provided signature lines for acceptance for each Plaintiff and for "Donna Zucker, President, Your Story, Inc." (*Id.*, Ex. A.) The parties agreed that New York law would govern the Contract. (Doc. 1, ¶ 6; Doc. 1-2, p. 4; Doc. 8, p. 2.)

Zucker presented Plaintiffs with the first draft of the Manuscript in mid-February 2015. (Doc. 1, ¶ 18). Plaintiffs rejected the draft as unsatisfactory. (Doc. 1, ¶ 19.) Plaintiffs subsequently provided Zucker with additional materials and in-person

coaching. (Doc. 1, ¶ 20.) Plaintiffs also hosted Zucker at one of Plaintiffs' four-day intensive immersion retreats at the Resort. (Doc. 1, ¶ 21.)

Zucker completed and delivered a final product of the Manuscript in August 2015. (Doc. 1, ¶ 20-22.) The Manuscript included a story recounting Zucker's personal experiences that came to be known as "Ana's Story." (Doc. 1, ¶ 23.) Believing Zucker's work to be completed, on August 15, 2015, Plaintiffs paid Zucker the sum of $17,500 in full and final payment for the Manuscript. (Doc. 1, ¶ 24.)

Thereafter, Zucker sought to revoke Plaintiffs' use of Ana's Story and volunteered to re-write the manuscript to remove the story without any fee or cost to Plaintiffs. (Doc. 1, ¶ 25.) Plaintiffs accepted the offer. (Doc. 1, ¶ 26.) However, on April 14, 2016, after Zucker had failed to deliver an updated manuscript, Plaintiffs notified Zucker formally of the termination of their relationship. (Doc. 1, ¶ 27.) In May 2016, Plaintiffs received from Zucker a revised manuscript with Ana's Story removed. (Doc. 13-1, Thomas Frank Aff., ¶ 15.) According to Plaintiffs, by this point, they had incorporated their own contributions to the Manuscript and had incorporated the Manuscript into their course materials at the Resort. (Doc. 1, ¶ 29.) Some of these materials were published on the Resort's website to promote Plaintiffs' services. (Doc. 8, pp. 3-4.)

Zucker and Your Story dispute that Plaintiffs paid all that was owed. (Doc. 8, p. 3.) Zucker asserts that Plaintiffs owe Zucker and Your Story approximately $75,000 for the additional work and revisions requested by Plaintiffs, and that Plaintiffs have failed to pay despite Zucker's requests for payment. (*Id*.)

Defendant Kathleen Daniels is an attorney licensed to practice in the state of New York. (Doc. 8, p. 2.) Daniels is copyright counsel to Zucker and Your Story. (*Id*.) On December 5, 2017, Daniels, on behalf of Zucker, sent a letter to Steven Rudnitsy, the President and Chief Executive Officer of the Resort, at the Resort's address in Tucson Arizona, threatening legal action in response to the Resort's use of the Manuscript. (Doc. 1., p. 30 and Ex. B.) The letter alleged that "publishing . . . excerpts of the Manuscript without authorization from" Zucker constituted "copyright infringement in violation of

federal law." (Doc. 1, ¶ 31, Ex. B.) The letter stated that although Plaintiffs had hired Zucker to write the Manuscript, copyright ownership in the Manuscript remained with Zucker until receipt of full payment from Plaintiffs, which had not yet occurred. (Doc. 1, ¶¶ 32, 46, 47, 57) According to Plaintiffs, after receiving Daniels's letter, the Resort suspended Plaintiffs' ability to continue offering its regular, immersive retreats, causing Plaintiffs to suffer damages. (Doc 1. ¶¶ 49, 58, 59.)

On about February 5, 2018, it came to Defendant Zucker's attention that excerpts of the Manuscript were again or still being used on the Resort website to promote Lancaster and Frank's "Awakening the Divine Self" retreats. (Doc. 8, p. 4.) On March 7, 2018, Defendant Daniels sent an email demanding that the infringing excerpts be removed to David Moorhead, Chicago-based Vice President and Assistant General Counsel for Marketing and Intellectual Property for Hyatt Hotels Corporation, the Resort's parent company. (Doc. 8, p. 4; Doc. 8-1, Ex. B, ¶¶ 9, 11.) On March 16, 2018, Moorhead telephoned Daniels to inform her that the material had been taken down. (Doc. 8-1, Ex. B, ¶ 15.)

On March 9, 2018, Plaintiffs filed the pending action. (Doc. 1.) Plaintiffs assert three claims against Zucker and Your Story: breach of contract (Count 1); tortious interference with contract (Count 2); and defamation per se (Count 4); and one claim - tortious interference with contract, against Daniels (Count 3). Plaintiffs further seek declaratory judgment in their favor for copyright ownership of the Manuscript.

## ANALYSIS

**A. Legal Standard for Specific Jurisdiction**

Arizona's long-arm statute permits courts to exercise personal jurisdiction over nonresident litigants to the maximum extent allowable by the United States Constitution. *A. Uberti & C. v. Leonardo,* 892 P.2d 1354, 1358 (Ariz. 1995). A federal court may exercise personal jurisdiction over a defendant consistent with due process if the defendant has "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Plaintiffs do not argue that any Defendant's contacts are so substantial, continuous, and systematic that the Court may exercise general jurisdiction over them. (*See* Doc. 13.) Therefore, the Court need only decide whether it may exercise specific jurisdiction over each Defendant based on the relationship between the Defendant's forum contacts and the Plaintiffs' claims. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

A district court may exercise specific jurisdiction over a defendant if: (1) the non-resident purposefully directs her activities or consummates some transaction with the forum or resident thereof; or performs some act by which she purposefully avails herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *See, e.g.*, *Picot v. Weston,* 780 F.3d 1206, 1211 (9th Cir. 2015). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). In evaluating whether the plaintiff has met this burden, the Court takes as true uncontroverted allegations in the Complaint. *Id.* at 800. If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

1. Purposeful Availment / Purposeful Direction

The Court applies a purposeful availment test to claims sounding in contract and applies a purposeful direction test to claims sounding in tort. *Planning Grp. of Scottsdale, L.L.C. v. Lake Mathews Mineral Properties, Ltd*., 246 P.3d 343, 349 (Ariz. 2011) (en banc); *Schwarzenegger*, 374 F.3d at 802.

A defendant purposefully avails herself of the privilege of conducting activities in the forum when she performs "some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). A contract with a party in the forum state does not

automatically establish sufficient minimum contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, the court looks to the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479. "[P]hysical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

A defendant purposefully directs her activities at the forum if she: (a) commits an intentional act, (b) expressly aimed at the forum state, (c) causing harm that the defendant knows is likely to be suffered in the forum state. *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 803); *see also Calder v. Jones*, 465 U.S. 783 (1984).

### 2. Claim Arises Out of Defendant's Forum-Related Activities

A claim arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action. *Fireman's Fund Ins. Co. v. National Bank of Cooperatives*, 103 F.3d 888, 894 (9th Cir. 1996).

### 3. Reasonableness

Finally, the Court's exercise of jurisdiction over a defendant must be reasonable such that it comports with "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475).

Jurisdiction is reasonable if "under the totality of the circumstances the defendant could reasonably anticipate being called upon to present a defense in a distant forum." *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987). Courts consider seven factors when analyzing reasonableness: "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution

of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998), holding modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (clarifying that "the 'brunt' of the harm need not be suffered in the forum state. If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." No individual factor is dispositive and a court must balance all seven factors. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993), holding modified by *Yahoo! Inc*. 433 F.3d 1199.

**B.  Defendant Daniels**

Plaintiffs bring a tort claim against Daniels, and therefore the Court considers whether Daniels purposefully directed her activities at Arizona. Taking the allegations in the Complaint as true, the Court concludes Plaintiffs have failed to make a prima facie case that Daniels expressly aimed her activities at Arizona such that this Court may exercise jurisdiction over her.[1]

Daniels's letter to the Resort in Arizona (1) demanded that the Resort remove the disputed Manuscript from the Resort's website; (2) notified the Resort that Plaintiffs had failed to fully compensate Zucker and Your Story for the Manuscript; and (3) demanded payment of the outstanding monies due in exchange for copyright ownership and/or permission to use the Manuscript. (Doc. 1, ¶¶ 56-57; Doc. 1, Ex. B.) Additionally, Daniels sent a follow-up email about the Manuscript's online posting to the Resort's parent company in Chicago. (Doc. 8, p. 4.)

"Out-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state." *Sher,* 911 F.2d at 1363. Rather, the attorney must "perform[] some type of affirmative

---

[1] Because the Court determines that Daniels did not purposefully direct her activities toward Arizona, it does not consider the second and third prongs of the minimum contacts test: whether Daniels's actionable conduct arose out of her forum-related activities or if asserting jurisdiction over Daniels would be reasonable.

conduct which allows or promotes the transaction of business within the forum state." *Id.* at 1362-63 (attorney expressly aimed activities at forum by requiring a client to encumber property located in forum state as security for payment of law firm's criminal representation in a different state and repeatedly traveling to forum state in the course of legal representation); *see also Beverage v. Pullman & Comley, LLC*, 306 P.3d 71, 76 (Ariz. App. 2013) (out of state law firm expressly aimed activities at Arizona because it "entered an attorney-client relationship with an Arizona client, prepared and issued an opinion letter to their Arizona client and accepted payment from within Arizona for services that were used in Arizona.") Like with non-attorney defendants, courts look to the aggregate of an attorney defendant's contacts to determine if jurisdiction is appropriate. *See*, *e.g.*, *Picot*, 780 F. 3d at 1212 (no purposeful direction when non-attorney, out of state defendant informed out of state third-party that plaintiff in forum state had breached a contractual agreement, resulting in detriment to plaintiff outside forum state); *Hoag v. French*, 357 P.3d 153, 158 (Ariz. App. 2015) (trustee's representation of Arizona beneficiaries "is not equivalent to actively soliciting business in Arizona," when trustee "has no offices or employees in Arizona; does not transact, advertise or solicit business in Arizona; and administers" the trusts outside of Arizona).

Furthermore, a cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter; some other affirmative conduct is required to give rise to specific jurisdiction. *Compare Yahoo! Inc.*, 433 F.3d at 1208 (letter alerting plaintiffs of infringement and of defendants' intent to file suit was not, alone, sufficient to establish jurisdiction) *and Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (jurisdiction lacking because "an offer for a license within a cease-and-desist letter does not somehow convert that letter into something more than it was already"); *with Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (finding specific jurisdiction over attorney whose cease and desist letters triggered automatic dispute resolution and intentionally misappropriated forum company's use of its domain name). Courts have distinguished

mere cease and desist letters from attorney's opinion letters directed to a forum state, which may support jurisdiction because they typically involve a letter plus some other affirmative conduct. *See*, *e.g.*, *Beverage*, 306 P.3d at 76.

Plaintiffs' allegations, taken as true, do not provide an adequate basis for the Court to find that Daniels expressly aimed her activities at Arizona. Daniels is a New York attorney representing New York clients. Daniels sent a take-down letter, which included information about resolving the dispute over the ownership of the Manuscript. The only legal claim raised in the letter involves a claim of federal copyright law. Daniels never traveled to Arizona or engaged in any other related communications with Arizona residents. Her Arizona-related activities are comprised entirely of the take-down letter she wrote to the Resort. Although the letter provides the Resort, a third party, with factual information that sheds a negative light on Plaintiffs, that information is relevant to the Resort's ability to understand and resolve the infringement claim. None of these facts suggest that Daniels affirmatively solicited business in Arizona or that she anticipated that her cease and desist letter would result in the deterioration of Plaintiffs' relationship with the Resort, causing an Arizona-based injury. Because the Court concludes Daniels did not expressly aimed her activities at Arizona, it will dismiss Daniels as a defendant in this action.

**C.     Defendants Zucker and Your Story Inc.**

The Court finds that it is proper to exercise personal jurisdiction over Zucker and Your Story as to each claim in the Complaint.

Zucker acted as Your Story's agent throughout the parties' contractual negotiations and performance, and she was the principal who performed the contractual obligations. The Complaint and the parties' briefings reference Zucker and Your Story interchangeably. In the contracts Zucker is identified as a "consultant" for Your Story, a limited liability corporation, and Zucker is the president of the company. (*See*, *e.g.*, Doc. 1; Doc. 1-2, Ex. A; Doc. 8, pp. 2-3.) Therefore, insofar as the Court has jurisdiction over Zucker, it also has jurisdiction over Your Story. *See, e.g.*, *Daimler AG v. Bauman*, 571

U.S. 117, 127 (2014) ("'the commission of some single or occasional acts of the corporate agent in a state' may sometimes be enough to subject the corporation to jurisdiction in that State's tribunals") (citing *International Shoe*, 326 U.S. at 318); *Williams v. Yamaha Motor Co.,* 851 F.3d 1015, 1023–24 (9th Cir. 2017).

1. Purposeful Availment / Purposeful Direction[2]

### a. Breach of Contract Claims Against Zucker and Your Story

Zucker and Your Story engaged in affirmative conduct to transact business within Arizona such that they should reasonably expect to be haled into court in this jurisdiction.[3] Both the terms of the contract between Plaintiffs and Zucker and Your Story, as well as the parties' actual course of dealing during the performance of the contract, demonstrate that Zucker anticipated repeated contact with Arizona to perform her contractual duties. The parties negotiated compensation for Zucker's travels between New York and Arizona and Zucker's attendance at Plaintiffs' four-day retreat at the Resort. Furthermore, the parties anticipated that the product resulting from the contract, the Manuscript, would be used in Arizona to promote Plaintiffs' Arizona-based workshops and retreats. (Doc. 8, pp. 2-3.) In sum, Zucker anticipated and engaged in a series of affirmative actions in Arizona over the course of a year.

### b. Tort Claims against Zucker and Your Story

Plaintiffs allege two tort claims against Zucker and Your Story. First, they allege that Zucker and Your Story's letter to the Resort defamed Plaintiffs by falsely stating that Plaintiffs had failed to pay for the Manuscript; that Zucker held copyright to the Manuscript, and that by publishing excerpts of the Manuscript, Plaintiffs had implicated the Resort in federal copyright infringement. (Doc. 1, ¶¶ 63-69.) Second, Plaintiffs allege

---

[2] Plaintiffs bring both contract and tort claims against Defendants Zucker and Your Story. The Court applies the purposeful availment test to Plaintiffs' breach of contract claims and the purposeful direction test to the defamation and intentional interference with contract claims.

[3] Both the breach of contract claim and the declaratory judgment cause of action are claims sounding in contract. *See Picot*, 780 F.3d at 1212 ("A claim for declaratory judgment as to the existence of a contract is an action sounding in contract"); *Stanford Ranch, Inc. v. Maryland Cas. Co.,* 89 F.3d 618, 625 (9th Cir. 1996) ("If a claim is dependent upon the existence of an underlying contract, the claim sounds in contract, as opposed to tort.").

that the letter damaged Plaintiffs' independent contractor relationship with the Resort, resulting in tortious interference with contract.

Zucker and Your Story purposefully directed their activities at the forum of Arizona by (a) committing an intentional act, (b) expressly aimed at the forum state, (c) causing harm that they knew was likely to be suffered in the forum state. First, Zucker and Your Story committed an intentional, "actual, physical act in the real world" by sending a letter, through counsel, to the Resort. *See Picot*, 780 F.3d at 1214.

Second, the Court looks to the aggregate of Zucker and Your Story's contacts with Arizona to consider whether they purposefully directed their activities at the forum state. *See Planning Group*, 246 P.3d at 349 ("Considering all of the contacts between the defendants and the forum state, did those defendants engage in purposeful conduct for which they could reasonably expect to be haled into that state's courts with respect to that conduct? If such minimum contacts exist, the defendant can fairly be expected to respond to all claims arising out of those contacts, whatever the plaintiff's theory of recovery.") Zucker and Your Story's aggregated contacts with Arizona include their conduct while performing the Contract. While Daniels's single act of sending the letter is not sufficient to satisfy express aiming at Arizona, Zucker and Your Story engaged in other conduct directed to the state, including physical entry into Arizona and repeatedly engaging with Arizona residents and entities.

Furthermore, a defendant's conduct may create the necessary contacts with a forum state when an element of an alleged tort occurs in the forum state. *See Walden*, 571 U.S. at 288 ("In this way, the 'effects' caused by the defendants' article—*i.e.,* the injury to the plaintiff's reputation in the estimation of the [forum state's] public—connected the defendants' conduct to [the forum state]"); *see also Calder,* 465 U.S. at 789–90 ("petitioners must reasonably anticipate being haled into court there to answer for the truth of the statements made in their [allegedly libelous] article.") (internal quotations omitted). As to the defamation claim, the letter was published to the Resort and its agents in Arizona. *See*, *e.g.*, *Dube v. Likins*, 167 P.3d 93, 104 (Ariz. App. 2007) (defamation

requires publication to a third party). Similarly, as to Plaintiffs' intentional interference with contract claim, the element of interference occurred in Arizona when the Resort received Zucker and Your Story's letter.[4] Moreover, Zucker and Your Story's knowledge of the contractual relationship is rooted in Zucker's prior contacts and physical presence in Arizona. For these reasons, the Court finds that Zucker and Your Story's alleged tortious conduct was expressly aimed at Arizona.

Third, the alleged injuries arising from both tort claims are suffered in Arizona. As to the defamation claim, the reputation-based effects of defamation were allegedly suffered in Arizona, with the Resort that employed Plaintiffs and provided the basis for their livelihood. Likewise, in Plaintiffs' tortious interference with contract claim, the resultant damage from the letter—the Resort's suspension of Plaintiffs' retreat offerings—occurred in Arizona.

### 2. Arising out of Forum-Related Activities

The second prong of the minimum contacts test is easily satisfied for both the tort and contract claims. Plaintiffs' claims arise directly out of Zucker and Your Story's forum-related contacts: their contract and ensuing conduct in Arizona.

### 3. Reasonableness

The Court finds that exercising jurisdiction over Zucker and Your Story is reasonable, considering all seven reasonableness factors. First, Zucker and Your Story purposefully interjected themselves into Arizona by entering into a contract that required their physical presence in the state, as well as a series of communications with and contractual performances in Arizona over the course of a year. Second, Zucker and Your Story may be burdened by defending this suit in Arizona; however, the inconvenience is not so great as to constitute a deprivation of due process. *Panavision Int'l*, 141 F.3d at 1323. As to the third factor, sovereignty, regardless of whether this case is tried in

---

[4] A prima facie showing of intentional interference with contract requires the following elements: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has been disrupted; and (5) that the defendant acted improperly. *ABCDW LLC v. Banning*, 388 P.3d 821, 831 (Ariz. App. 2016).

Arizona or New York, the contract dispute will be decided under New York law and the tort claims will be decided under Arizona law. Fourth, Arizona has an interest in adjudicating this dispute because it has a "special interest in exercising jurisdiction over those who have committed tortious acts within the state." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977). The efficiency of the forum, the fifth factor, is determined primarily by considering "where the witnesses and the evidence are likely to be located." *See Core-Vent Corp.*, 11 F.3d at 1489. Although evidence regarding the contract dispute may be found in both Arizona and New York, the evidence regarding the tort claims is primarily situated in Arizona. Sixth, Plaintiffs' interest in convenient relief is served by exercising jurisdiction in Arizona. Seventh, New York exists as a viable alternative forum.[5] Balancing all seven factors, the Court finds that it is reasonable to exercise jurisdiction over Zucker and Your Story.

Finally, even if the court lacks specific personal jurisdiction over Zucker and Your Story with respect to the tort claims, this Court would properly exercise pendent personal jurisdiction over these related claims. "[U]nder the doctrine of pendent personal jurisdiction, a defendant may be required to defend a 'claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction.'" *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004) (quoting *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004)). Plaintiffs' claims arise from a common nucleus of operative fact, and exercising jurisdiction with regard to all remaining claims facilitates judicial efficiency and avoids the inconvenience to all parties of litigating these claims piecemeal in separate jurisdictions.

---

[5] Defendants argue the exercise of jurisdiction is inappropriate because Defendants reside in New York, drafted some parts of the Manuscript in New York, received some payments in New York, and the contract includes a New York choice of law clause. (Doc. 8, p. 11.) Even if jurisdiction exists in New York, this does not nullify jurisdiction in Arizona. *See*, *e.g.*, *Planning Grp.*, 246 P.3d at 349 ("personal jurisdiction is not a zero-sum game; a defendant may have the requisite minimum contacts allowing the exercise of personal jurisdiction by the courts of more than one state with respect to a particular claim.")

## CONCLUSION

In sum, due process requires that a defendant have sufficient minimum contacts "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316. Here, due process permits this Court's exercise of specific personal jurisdiction over Zucker and Your Story. Due process does not permit this Court to exercise jurisdiction over Daniels.

THEREFORE, IT IS ORDERED THAT the Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 8) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED THAT Defendant Daniels is DISMISSED from this action without prejudice.

IT IS FURTHER ORDERED THAT Defendants Zucker and Your Story shall file an Answer to the Complaint within fourteen (14) days of the date of this Order, pursuant to Fed. R. Civ. P. 12(a)(4).

Dated this 27th day of August, 2018.

Honorable Jennifer G. Zipps
United States District Judge